UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MABEL DUPUIS, an individual,

              Plaintiff,

     v.

MARRIOTT CORPORATION,
a Delaware corporation,

              Defendant.

Case No.: 3:12-cv-00580-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

    Mabel DuPuis ("DuPuis") brings this negligence action against Marriott Corporation ("Marriott") alleging DuPuis sustained injuries as a direct result of Marriott's breach of its duty to protect patrons from the unreasonable risks posed by the revolving door in the front entry of its downtown waterfront hotel ("Hotel") in Portland, Oregon. DuPuis alleges Marriott acted with

1 - OPINION AND ORDER

negligence and gross negligence and argues the doctrine of *res ipsa loquitur* applies to the Hotel's revolving door.

Currently before the court is Marriott's Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56 on all claims and DuPuis's Motion for Sanctions Re: Spoliation against Marriott for its alleged spoliation of evidence. Oral argument was heard on these motions. Following oral argument, Marriott filed a Motion for Leave seeking to file a supplemental exhibit in support of its summary judgment motion. Because triable issues of fact exist as to whether Marriott breached its duty to DuPuis and whether Marriott's alleged breach caused DuPuis injuries, Marriott's motion for summary judgment is denied.[1] Because Marriott did not spoil probative evidence, DuPuis's motion for sanctions is denied. Additionally, Marriott's request for leave to file a supplemental exhibit is denied as untimely.

*Preliminary Evidentiary Matters*

I.    Unauthenticated Depositions

The evidence presented in support of, or in opposition to, a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of Evidence. FED. R. CIV. P. 56. To satisfy the requirement of authentication, a condition precedent to admissibility, the proponent must produce "evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). Evidence that is not properly authenticated will not be considered by the court when reviewing a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(i).

2 - OPINION AND ORDER

As to depositions, the Ninth Circuit stated in *Orr*:

> A deposition or an extract therefrom is authenticated in a motion for summary
> judgment when it identifies the names of the deponent and the action and includes
> the reporter's certification that the deposition is a true record of the testimony of the
> deponent. *See* FED. R. EVID. 901(b); FED. R. CIV. P. 56(e) & 30(f)(1). Ordinarily,
> this would have to be accomplished by attaching the cover page of the deposition and
> the reporter's certification to every deposition extract submitted. It is insufficient for
> a party to submit, without more, an affidavit from her counsel identifying the names
> of the deponent, the reporter, and the action and stating that the deposition is a 'true
> and correct copy.' Such an affidavit lacks foundation even if the affiant-counsel were
> present at the deposition.

*Orr*, 285 F.3d at 774 (footnote and case citations omitted). Here, DuPuis submitted transcript pages

from the depositions of Gail Cheatham, Mary Luckeroth, Billy Moore, Martin Gaona, and herself

without the reporters' certifications. Marriott independently offered properly authenticated copies

of the Cheatham, Moore, Gaona, and Dupuis depositions. The court views Marriott's authentication

of the parties' mutual offerings as sufficient evidence these documents are what the parties purport

them to be. Accordingly, the transcript pages proffered by DuPuis of the Cheatham, Moore, Gaona,

and Dupuis depositions are authenticated and admitted. Only DuPuis, however, offered the

Luckeroth deposition. Accordingly, the excerpts of Luckeroth's deposition are not properly

authenticated. Nonetheless, even if the court were to consider Luckeroth's testimony, its contents

would not alter the court's conclusion.

II.    Hearsay

In ruling on a motion for summary judgment, the court will consider the admissibility of the

proffered evidence's *contents*. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the

summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead

focus on the admissibility of its contents."). It will not focus on the admissibility of the evidence's

*form*. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving

party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

Although both parties rely on Quality Door Service ("QDS") work order #43171, Marriott raises concerns that the document contains hearsay within hearsay: a QDS employee's transcription of a Marriott employee's statements. At trial, however, the work order's contents could be properly admitted into evidence in a number of ways. The work order itself likely falls into the business records exception to the rule against hearsay. FED. R. EVID. 803(6). Marriott's telephonic communications with QDS may be admissible as an opposing party's statement under FED. R. EVID. 801(d)(2)(D). In addition, relevant witnesses may be available to testify to their personal knowledge of the work order's contents under FED. R. EVID. 602. Accordingly, the court will consider the document's contents in ruling on the motions currently before it.

*Factual Background*

On May 27, 2011, DuPuis and her daughter, Gail Cheatham ("Cheatham"), filed into the Hotel's front entry revolving door. (Anthony Broadman Decl. ("Broadman Decl.") Ex. A, Aug. 15, 2013.) Cheatham walked in front of DuPuis within the same door segment. (Gail Cheatham Dep. ("Cheatham Dep.") 56:2-56:16, 54:12-54:15, March 27, 2013.) Shortly after entering the door, DuPuis fell. (Broadman Decl. Ex. A).

DuPuis has limited memory of the event. (Broadman Decl. Ex. A.) She does not recall what caused her to fall, whether she made physical contact with the revolving door prior to falling, in what manner she fell, or where she felt pain after falling. (Mabel DuPuis Dep. ("DuPuis Dep.") 75:23-75:25, 69:20-69:23, 76:15-76:24, March 27, 2013.) Cheatham did not see her mother fall but she heard her scream and the thud of her head on the cement floor. (Cheatham Dep. 54:3-55:3.) In a witness statement, Cheatham told the Hotel the door was rotating "way too fast" and knocked

DuPuis down. (Broadman Decl. Ex. A.) No other witnesses came forward with observations of the accident. (Broadman Decl. Ex. A.)

Still in the revolving door herself, Cheatham turned around to find her mother lying on the floor with her torso positioned on the outside pavement and her bottom half still within the door's partition. (Cheatham Dep. 55:4-55:19, 57:11-57:12.) According to Cheatham, the door continued to turn, pushing DuPuis's body. (Cheatham Dep. 57:20-57:24.) Cheatham maneuvered around their luggage and straddled her mother, using her body to block the incoming door pane. (Cheatham Dep. 55:9-55:12.) The pane struck Cheatham and stopped. (Cheatham Dep. 58:12-58:19.)

Marriott maintains it is "physically impossible" for the events to have transpired as Cheatham describes. (Alan Black Decl. ("Black Decl.") ¶ 15(d), July 18, 2013.) The door has multiple safety sensors: overhead infrared sensors mounted on the top of each door wing designed to stop the door if they detect a stationary object; pressure sensors on the base of each door wing designed to stop the door if they come into contact with someone's foot or bag; and two stationary pressure sensors on the inbound edges of the door frame designed to halt the door if something becomes wedged between the frame and the door wings. (Martin Gaona Dep. ("Gaona Dep.") 28:7-28:25; April 1, 2013; William Moore Decl. ("Moore Decl.") ¶ 6, July 23, 2013.) If the door struck DuPuis as alleged, the foot-level pressure sensor should have halted the door's rotation. As DuPuis lay on the floor, the overhead sensor might have identified her presence and stopped the door. If the door pushed DuPuis into the door frame, the side pressure sensors should have shut off the motor. Furthermore, the sensors are electronically integrated so if any single sensor malfunctioned, the door should have stopped. (Billy Moore Dep. ("Moore Dep.") 31:6-31:8, Aug. 23, 2013; Gaona Dep. 69:3-69:17; Moore Decl. ¶ 7; Dean Peddicord Dep. ("Peddicord Dep.") 30:5-30:15, Feb. 27, 2013.)

5 - OPINION AND ORDER

Marriott employs QDS, the door's installer, for maintenance and repair work. (Moore Dep. 29:11-29:29.) Industry standards recommend operators inspect revolving doors at least annually. (Gaona Dep. 19:16-19:23, 68:16-68:23.) However, neither Marriott nor QDS performs routine inspections of the door's safety features. (Moore Dep. 48:5-48:25; Gaona Dep. 19:24-20:18.) Marriott employee, Billy Moore ("Moore"), occasionally informally tests the door's sensors and automatic features as he walks through it in the normal course of business. (Moore Dep. 48:10-48:16.) QDS briefly inspects the door on service calls. (Gaona Dep. 17:2-17:24.) Neither Marriott nor QDS assess the door's rate of rotation during these informal inspections. (Moore Dep. 24:1-24:25.) Moore testified the door has an appropriate speed: "It doesn't hurry you. That's for sure." (Moore Dep. 34:10-34:23.)

Host Hotels and Resorts ("Host") owns the Hotel. (Moore Decl. ¶ 4.) Marriott is the tenant responsible for the Hotel's management. (Moore Decl. ¶ 3.) In 2011, at Marriott's request, Host initiated a remodeling project of the Hotel lobby. (Moore Decl. ¶¶ 5-6.) It had no plans to alter the Hotel's revolving door. (Moore Decl. ¶ 7.) However, a subcontractor of Host's general contractor damaged the door's wiring while attempting to drive a scissor lift through it, thus necessitating repair work. (Moore Decl. ¶ 10; Moore Dep. 14:21-15:20; Gaona Dep. 67:21:-68:15.) As a result, the door often stopped unexpectedly. (Dan Case Decl. ("Case Decl.") ¶ 5, Aug. 23, 2013.) Marriott hired QDS to repair the door. (Marc Hull Decl. ("Hull Decl.") Ex. P, July 25, 2013.) In the process, QDS replaced some of the sensors but maintained its overall configuration and design. (Case Decl. ¶ 6.)

On August 7, 2012, Marriott called QDS and requested a technician be dispatched to evaluate the door. QDS transcribed the reason for the call on work order #43171: "[o]utside inspection of revolving door scheduled for 1:00 pm regarding pending law suit. Bonnie is

6 - OPINION AND ORDER

requesting that the door be adjusted prior to inspection (door not stopping)." (Hull Decl. Ex. M.) The dispatched technician noted the door's superscan and pressure sensors were operating correctly upon his arrival. (Hull Decl. Ex. M.) He proceeded to adjust the superscan sensors and "[ensure] all safety sensors were working correctly." (Hull Decl. Ex. M.)

*Legal Standards*

I.    Motion for Sanctions Pursuant to the Court's Inherent Authority

Courts are vested with inherent powers to facilitate the "orderly administration of justice." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)) (internal quotation marks omitted).

One such inherent power is the authority to levy sanctions for the spoliation of relevant evidence. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence."). Spoliation sanctions are warranted only where the spoiling party had some notice the evidence was potentially relevant to a pending or reasonably foreseeable lawsuit. *See United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752, 758 (9th Cir. 2009) ("[S]anctions may issue only when a party had some notice that the evidence was potentially relevant.").

II.   Motion for Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

7 - OPINION AND ORDER

56(a) (2013). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings to identify facts that show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Med., Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

### Discussion

Dupuis's motion for sanctions potentially affects the court's summary judgment determination because, if granted, the sanctions motion could result in imposition of adverse inferences that in turn alter the factual landscape upon which summary judgment will be determined. *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) ("To determine if the district court erred in dismissing [plaintiff's] action on summary judgment, we must first resolve

8 - OPINION AND ORDER

whether [plaintiff] posits a successful spoliation argument. Showing evidence of spoliation of the claim documents by the defendants would allow [plaintiff] to argue to the jury adverse inferences of fraud that might be sufficient to defeat summary judgment."). Accordingly, the court must resolve DuPuis's motion for sanctions before it can rule on Marriott's summary judgment motion. *Id.*

I.    Spoliation

Parties to current or anticipated lawsuits have the obligation to preserve all evidence they know or reasonably should know is relevant to litigation. *See Kitsap Physicians Serv.*, 314 F.3d at 1001 (defendant did not violate duty to preserve relevant evidence when it destroyed documents in accordance with record retention schedule before receiving any reasonable notice suit might be filed). DuPuis alleges that Marriott breached this duty when it hired QDS to inspect and adjust its revolving door in August 2012, months after DuPuis filed her lawsuit and before either side's experts could examine the door. In support of this accusation, DuPuis cites to QDS work order #43171, dated August 7, 2012, which states: "[o]utside inspection of revolving door scheduled for 1:00 pm regarding pending law suit. Bonnie is requesting that the door be adjusted prior to inspection (door not stopping)."

Sanctions motions, especially those predicated on the intentional destruction of evidence, are a serious business. Such motions directly call into question a party or party's counsel's honesty and integrity. They should not be lightly contemplated and when filed should be supported by strong evidence and candid briefing.

Here, DuPuis's briefing in support of its motion for sanctions based on spoliation misled the court in two separate respects. First, DuPuis misrepresented legal authority in her Opening Brief when she asserted "this is not Marriott's first venture into the realm of evidence spoliation." (Pl.'s

9 - OPINION AND ORDER

Mem. Sanctions 11, n.35.) To support that charge she cited *Milbourn v. Marriott*, 67 F.3d 307 (9th Cir. 1995), a case that did not involve Marriott Corporation at all, but instead had as defendants Everett and Jacqueline Marriott, owners of a laundry. DuPuis's use of *Milbourn* as evidence that Marriott has been engaged in a pattern and practice of spoiling evidence is at best evidence that DuPuis's attorneys failed to read the case beyond its caption – an inexcusable practice when offering case authority to a court – and at worst an intentional effort to mislead the court about Marriott's purported litigation tactics. "'The court relies on the lawyers before it to state clearly, candidly, and accurately the record as it in fact exists.'" *In re Girardi*, 611 F.3d 1027, 1037 (9th Cir. 2010) (quoting *In re Boucher*, 837 F.2d 869, 871 (9th Cir. 1988)). DuPuis's attorneys failed that duty on this point.

The court notes that Marriott put DuPuis on notice of her error in its response to her motion, but DuPuis's attorneys failed to respond directly and promptly to this disclosure. In its response brief Marriott clearly pointed out that "the 'Marriott' in [*Milbourn*] has no connection whatsoever to Marriott International" (Def.'s Resp. 11-12.) However, DuPuis's attorneys sent no letter to the court apologizing for the misleading citation and did not directly address it at the beginning of DuPuis's Reply Brief. Instead, DuPuis's attorneys relegated their error to a footnote on page two of the Reply Brief without apology or explanation, and then sought to distract from their error by citing other cases purporting to evidence Marriott's previous spoliation conduct. There is no reasonable excuse for taking this approach to rectifying such an egregious error.

Second and more troubling is DuPuis's out-of-context presentation of work order #43171. DuPuis asks the court to enter a default judgment against Marriott alleging that Marriott deliberately tried to destroy evidence unfavorable to it by hiring QDS to repair the revolving door's sensors after DuPuis filed her lawsuit. DuPuis claims that just hours before a scheduled litigation inspection on

10 - OPINION AND ORDER

August 7, 2012, Marriott called QDS to come to the hotel to fix the door's sensors, which allegedly were not functioning properly.

In her motion, DuPuis failed to disclose to the court that eight months earlier, in December 2011, a construction contractor damaged the revolving door and its sensors while attempting to drive a scissor lift through the door, which damage resulted in the replacement of at least some of the door's sensors.[2] Failing to disclose the December 2011 damage to and replacement of the door's sensors suggested the sensors' August 2012 condition was unchanged from their May 2011 condition. But in fact the sensors' condition had been significantly changed in the intervening period by the December 2011 scissors lift incident. This deprived the sensors of the evidentiary value DuPuis claims they would have had for the August 2012 litigation inspection had Marriott not tampered with them hours before the inspection was to occur. DuPuis's omission thus created the false impression that key evidence had been destroyed to DuPuis's irreparable prejudice, a misimpression not corrected until Marriott disclosed all the facts in its Response Brief.

In her Reply Brief DuPuis asserts the incredible proposition that the December 2011 scissor lift incident is irrelevant to whether spoliation sanctions should be imposed against Marriott. Spoliation sanctions in part turn on the prejudice done to the aggrieved party's case by the accused party's destruction of unfavorable evidence. *See, e.g., Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) ("Spoliation of evidence is the 'destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation.'") (citation omitted); *Millenkamp v. Davisco Foods Intern., Inc.*, 562 F.3d 971, 981 (9th

---

[2] Again, it was Marriott who disclosed these facts to the court in its Response Brief. (Def.'s Resp. 4-6.) DuPuis concedes the door's damage and subsequent repair from the December 2011 scissor lift incident did not constitute spoliation.

Cir. 2009) (spoliation sanctions include allowing the jury to draw the negative inference that the destroyed evidence was likely damaging to the accused party's case). DuPuis's liability case against Marriott rests entirely on the premise that the revolving door's sensors were not functioning properly when she entered the door on May 27, 2011, as her retained expert concluded in his report after watching a video of the revolving door taken minutes after DuPuis's accident. (Hull Decl. Ex. B at 6 ("It is our opinion on a more probable than not basis the cause of the accident was a lack of sensor inspection and maintenance that resulted in sensors not performing as specified.").) DuPuis's expert's opinion completely undermines DuPuis's relevancy argument by identifying as key the sensors' condition at the time of DuPuis's accident and thus underscoring the critical significance of the damage to and replacement of those sensors in December 2011.

Although DuPuis's lack of candor in presenting her sanctions motion to the court is enough to warrant its denial, her motion fares no better on its merits. To prevail on her motion DuPuis must demonstrate that Marriott's alleged spoliation prejudiced one of her claims. *Nelson v. Original Smith & Wesson Business Entities*, 449 Fed. Appx. 581, 584-85 (9th Cir. 2011). This she cannot do for at least two reasons. First, DuPuis has failed to show that Marriott's alleged conduct in August 2012, changed the sensors' condition from their May 2011 state and prevents her from proving her case – a burden she cannot meet because the sensors were damaged and replaced in December 2011. Second, DuPuis has produced evidence of the door's improper functioning: DuPuis's daughter testified that she saw the door failing to stop revolving after DuPuis fell inside the door, and DuPuis's expert opined that the sensors did not properly work because, based on his review of a near-contemporaneous video and DuPuis's daughter's testimony, the door rotated faster than industry standards and failed to stop when obstructed.

12 - OPINION AND ORDER

Nor has DuPuis presented sufficient evidence of Marriott's wilful destruction of evidence. Culpability is a prerequisite to imposing sanctions against a party for spoliation. *Smith v. United Parcel Service, Inc.*, 433 Fed. Appx. 623, 627 (9th Cir. 2011). DuPuis's evidence of Marriott's culpability consists exclusively of work order #43171, a one-page document prepared by QDS. The work order reads: "Outside inspection of revolving door scheduled for 1:00 pm regarding pending law suit. Bonnie is requesting that the door be adjusted prior to the inspection (door not stopping)." (Joseph R. Sexton Decl. ("Sexton Decl.") Ex A, Sep. 3, 2013.) Marriott presents substantial witness testimony and documents to dispute the work order's implication Marriott intended to alter the door, including the testimony of QDS employee Martin Gaona who said he found the door to be working properly and made no changes to its sensors. (Second Marc Hull Decl. ("Hull Sanctions Decl.") Ex H at 38-39, Sep. 10, 2013.) DuPuis claims Marriott deliberately and knowingly tried to destroy evidence it knew to be relevant to DuPuis's claims, a conclusion that requires the court here to find that Marriott engaged in dishonest and fraudulent conduct intended to subvert the civil justice process. DuPuis cannot carry this serious burden by producing a document which contains a third party's memorialization of its interpretation of Marriott's purported request. Without the substantiating testimony of the QDS employee who created work order #43171, testimony from a Marriott employee from which culpability can firmly inferred, or some other evidence demonstrating that Marriott deliberately attempted to destroy relevant evidence, DuPuis falls well short of meeting her burden of proof.

A spoliation instruction "must make sense in the context of the evidence[.]" *U.S. v. Laurent*, 607 F.3d 895, 903 (1st Cir. 2010). In the context of the evidence here, DuPuis has not demonstrated that either a default judgment or an adverse inference instruction would make sense. Accordingly, DuPuis's motion for sanctions is denied.

13 - OPINION AND ORDER

II.    <u>Summary Judgment</u>

    *A.*    *Negligence*

    Oregon law governs DuPuis's negligence claims. *Maricopa County of State of Arizona v. Maberry*, 555 F.2d 207, 210 (9th Cir. 1977) ("It is hornbook law that a federal court in a diversity case must follow the substantive law of the state where the incident occurred."). Under Oregon law, where parties to a suit invoke a particular status defining the parties' relationship, traditional negligence law applies. *See Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 17 (1987) ("[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."); *see also Waldner v. Stephens*, 345 Or. 526, 535 n.9 (2008) ("In *Fazzolari v. Portland School District No. 1J*, . . . this court introduced a general 'foreseeability' formula to replace traditional concepts of duty, breach, and causation, as those concepts were used in negligence cases, when determining whether a case required resolution of facts by a jury."). The plaintiff must show: (1) defendant owed plaintiff a duty; (2) defendant breached that duty; (3) defendant's breach was the cause-in-fact of plaintiff's harm; and (4) plaintiff suffered some legally cognizable damage. *Brennen v. City of Eugene*, 285 Or. 401, 405 (1979).

    Here, the parties do not dispute that, as the occupier of the Hotel, Marriott had a duty to exercise reasonable care to ensure its premises were safe for invitees, such as DuPuis. *Rich v. Tite-Knot Pine Mill*, 245 Or. 185, 191-92 (1966) (stating occupier of business premises has the affirmative duty to protect invitees from premise dangers of which the occupier reasonably should

14 - OPINION AND ORDER

know and defining invitees as those who enter premises on business that concerns the occupier at the occupier's express or implied invitation). Thus, Marriott concedes the first element, duty. Nor is there any argument as to the fourth element, damage. The undisputed facts show DuPuis sustained physical injuries while entering the Hotel. Physical harm is a "cognizable injury for purposes of stating a negligence claim." *Paul v. Providence Health System-Oregon*, 237 Or. App. 584, 590 (2010) (explaining plaintiff could have satisfied the damages element of negligence by alleging she suffered some physical effect from exposure to defendant's products). Rather, Marriott moves for summary judgment against DuPuis on the second and third elements of negligence, arguing there is no genuine issue of material fact to suggest Marriott breached its duty owed to DuPuis or that Marriott was the cause in fact of DuPuis's injuries.

### 1. Breach

Marriott had the undisputed duty "to act as a reasonable person would, or would not, act in the same or similar circumstances to discover conditions of the premises 'that create an unreasonable risk of harm to [an] invitee'" and to either "eliminate such conditions or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm." *Maas v. Willer*, 203 Or. App. 124, 129 (2005) (quoting *Woolston v. Wells*, 297 Or. 548, 557–58 (1984)). DuPuis claims Marriott breached this duty by maintaining a revolving door that spun rapidly, incessantly, and unsafely. In support of this contention, DuPuis cites to Cheatham's observation that the door was revolving at a dangerous rate and Cheatham's testimony the door continued to spin after DuPuis fell, pushing her body along the floor. In response, Marriott maintains the door was spinning at a reasonable rate and argues it is physically impossible for the events to have transpired as Cheatham describes them. Specifically, if the door made contact with DuPuis as she lay on the floor, its safety

sensors should have halted its spin. If any of those sensors malfunctioned, the door should have stopped.

The parties dispute whether the door posed an unreasonable risk to invitees and, accordingly, whether Marriott took appropriate measures to address it. These are questions of fact best left to a jury. *Donaca v. Curry Cnty.*, 303 Or. 30, 38-39 (1987) (whether a risk was foreseeable and whether the defendant's conduct was reasonable are "empirical questions" that should only be decided by the court in "extreme case[s]"). Summary judgment on the issue of breach is not appropriate.

    2. Causation

The viability of DuPuis's negligence claim turns on the causal connection between Marriott's alleged breach and DuPuis's fall. Under Oregon negligence law, in order to prove causation, a plaintiff must show it is reasonably probable that "but-for" defendant's negligence, plaintiff would not have been injured. *See Joshi v. Providence Health System,* 198 Or. App. 535, 538–39 (2005), *aff'd,* 342 Or. 152 (2006) ("'Cause-in-fact' also has a well-defined legal meaning: it generally requires evidence of a reasonable probability that, but for the defendant's negligence, the plaintiff would not have been harmed."). Where "two causes concur to bring about a harmful result, and either one of them, operating alone, probably would have brought about the harm," Oregon courts apply a "substantial factor" standard instead of the "but-for" test. *Id.* at 540. In such cumulative circumstances, a plaintiff can establish causation by showing a factor substantially contributed to her injuries even if, operating alone, the factor would not have resulted in the harm. *Id.* at 542.

Regardless of which standard is to be applied, "[a] mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'"

*Griffin v. K.E. McKay's Mkt. of Coos Bay, Inc.*, 125 Or. App. 448, 452 (1993). "It is not necessary to establish negligence by direct and positive evidence, but there must be facts from which a reasonable inference of negligence may be drawn." *Simpson v. Hillman*, 163 Or. 357, 363 (1940). For instance, in *Simpson*, the Oregon Supreme Court found; that in the absence of evidence showing whether a child unexpectedly darted in front of defendant's car, ran into the side of defendant's car, or walked out plainly in front of the car giving defendant sufficient time to avoid hitting her; it was no more reasonable to assume defendant's alleged failure to lookout for pedestrians caused the child's injuries as it was to assume the child would have been injured regardless. *Id.* In *Feazle-Hurt v. Target*, No. 3:12-cv-00997-AC, 2013 WL 5797601, at *5 (D. Or. Oct. 28, 2013), this court granted summary judgment on plaintiff's Oregon premises liability claim because, without any evidence establishing how the merchandise tag plaintiff allegedly slipped on came to be on the floor; it was just as likely Target caused the tag to be on the floor as it was the tag was there through no fault of Target.

Here, it is a close question whether DuPuis presents evidence sufficient to support an inference that it is more probable than not that Marriott's door caused her fall. There is no evidence the door struck DuPuis or otherwise made her lose her balance. DuPuis does not remember the incident and there were no eyewitnesses. However, in *Whalen v. American Medical Response Northwest, Inc.*, 256 Or. App. 278, 289 (2013), the Oregon Court of Appeals explicitly rejected the contention that a "plaintiff's inability to recall having been injured is a *per se* bar to prevailing on an associated tort claim." A plaintiff's testimony is not the only viable source of proof defendant committed a tort against her. *Id.* In *Whalen*, the court found an expert's affidavit[3] expressing

---

[3]In *Whalen*, plaintiff filed the expert affidavit in accordance with OR. R. CIV. P. 47(E), which requires very limited disclosure, whereas FED. R. CIV. P. 56 governs this federal suit and

willingness to testify that a traumatic event in an ambulance with defendant likely triggered plaintiff's amnesia paired with evidence of defendant's offensive behavior after the ambulance ride, plaintiff's nightmares about defendant, and plaintiff's obsessive feeling of uncleanliness were sufficient to preclude summary judgment on plaintiff's battery claim. *Id.* at 288, 292.

DuPuis presents a similar combination of circumstantial evidence and expert opinion. Cheatham testified the door was moving too quickly and its sensors failed to detect and protect her mother. DuPuis's expert opines it is reasonable to conclude the sensors were not functional at the time of DuPuis's accident as the door continued to rotate after she had fallen to the floor. (Declaration of Mark Lawless ("Lawless Decl.") Ex. B"). Moreover, unlike the circumstances in *Feazle-Hurt*, where it was equally likely a customer was at fault for the tag on the floor, Marriott was solely responsible for the proper functioning of the door. Given the fact she fell while navigating this allegedly unsafe door, DuPuis argues a reasonable jury could infer the door was causally linked to her fall.

Oregon courts have found similar showings sufficient to establish a genuine question of fact under both the "but-for" and "substantial factor" standards. In *O'Donnell by Clarke v. Floan*, 82 Or. App. 656 (1986), a tenant brought suit against her landlord alleging she fell in its negligently-maintained stairwell. No eyewitnesses saw her fall but someone saw her tumble through the doorway at the bottom of the stairs. *Id.* at 659-60. At the trial, the tenant could not recall the accident, but she told doctors at the time of injury that she had fallen off the last step. *Id.* at 659. In regards to the question of causation, the Oregon Court of Appeals held evidence showing plaintiff

---

requires the parties' expert affidavits or declarations to "[be] made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

tripped or slipped on the last step provided "the needed connection between the allegation of negligence and the injury" such that a reasonable jury could find the stairs' "unreasonably dangerous condition caused plaintiff to fall." *Id.* at 660.  Similarly, in *Wells v. Home Purchasing Corp., a Subsidiary of Lutz Serv. Corp.*, 84 Or. App. 103, 105 (1987), plaintiff fell on defendant's unlit porch. Plaintiff did not know why she fell. *Id.* at 106.   The Oregon Court of Appeals found evidence establishing plaintiff could not see the porch's condition was sufficient to present a question of fact whether "the absence of lighting was a substantial factor in causing plaintiff to fall" and, accordingly, held the trial court erred by granting defendant's motion for judgment notwithstanding the verdict. *Id.* at 107.

Plaintiffs in *O'Donnell by Clarke* and *Wells* presented evidence that (1) they fell on the defendant's at-issue property and (2) defendant's property posed unreasonable safety risks. Oregon courts deemed these offerings sufficient to present a reasonable question of fact on causation. DuPuis makes an equivalent showing here.  She has established she fell in Marriott's door and presented evidence the door was unsafe.   While DuPuis's proffered causal evidence is not overwhelming, in line with *O'Donnell by Clarke*, *Wells*, and *Whalen*, her evidence is sufficient for a jury to find it slightly more probable than not that the door was causally linked to DuPuis's fall. Viewing these facts in the light most favorable to DuPuis, the non-moving party, summary judgment is not appropriate.

B.     *Gross Negligence*

Where a person acts with (1) "conscious indifference" to or (2) "reckless disregard" of, the rights of others, his liability is elevated from ordinary negligence to gross negligence. *State v. Hodgdon*, 244 Or. 219, 223 (1966) ("So in gross negligence, we find not simply an inadvertent breach of duty or imprudent conduct (as in ordinary negligence), but the violation of the duty to

19 - OPINION AND ORDER

others is so flagrant as to evidence an indifference to or reckless disregard of the rights of others.").

It follows that, in order to establish gross liability, DuPuis must show Marriot had something to

disregard or act indifferent toward. DuPuis failed to present evidence showing Marriott was aware

of, or should have been aware of, the door's dangers prior to her accident. No reasonable jury could

find Marriott disregarded, or was indifferent to, the door's condition in the absence of evidence that

Marriott was on notice the door posed a hazard. Accordingly, summary judgment is appropriate on

DuPuis's gross negligence claim.

     C.     *Res Ipsa Loquitur*

     In her Third Claim for Relief, DuPuis alleges Marriott is liable for her fall and injuries

pursuant to the doctrine of res ipsa loquitur. (Compl. ¶ 28.) Marriott moves for summary judgment

against this claim on the ground DuPuis "is obligated to prove that her alleged injury was probably

caused by some negligent conduct on the part of Marriott for the doctrine to apply." (Def.'s Mem.

Summ. J. 15.) The doctrine of *res ipsa loquitur* is a "rule of circumstantial evidence that permits

a jury to infer both negligence and causation if the harm that occurs is of a kind that . . . more

probably than not would not have occurred in the absence of negligence on the part of the

defendant." *Hammer v. Fred Meyer Stores, Inc.*, 242 Or. App. 185, 190 (2011) (quoting *McKee

Electric Co. v. Carson Oil Co.*, 301 Or. 339, 353 (1986)) (internal quotation marks omitted). In

order to proceed at trial with these inferences, a plaintiff must show: (1) an injury, (2) caused by

an incident of the type which normally "does not occur in the absence of negligence," and (3)

defendant was "more probably than not" responsible for the negligence that caused the injury.

*Hammer*, 242 Or. App. at 190–91.

     The Oregon Supreme court has explained "res ipsa loquitur is simply a rule relating to a

particular kind of circumstantial evidence . . . [and] permits the drawing of an inference which rests

upon no specific causative circumstance in the case" *Powell v. Moore*, 228 Or. 255, 257 (1961). In *Powell*, plaintiff fell when defendant's loading ramp slid away from its truck. To determine whether the doctrine applied to plaintiff's claim, the Oregon Supreme Court asked whether, in the ordinary use of a ramp, the ramp would dislodge without some negligent care or conduct. *Id.* at 266 ("We think that in the 'ordinary instance' a ramp used under the circumstances which attended the use of this ramp on this occasion, would not slip and fall unless someone was negligent.").

In this case, however, the jury will not be asked to draw an inference of Marriott's negligence from the fact of an occurrence – a malfunctioning door. *See Powell,* 228 Or. at 269 ("We believe that it is proper for the court to instruct the jury with respect to the permissibility of drawing the inference of defendant's negligence from the facts of the occurrence in appropriate cases."). Nor will the jury be asked to adduce whether it was Marriott, as opposed to some other party, who was responsible for the malfunctioning door. *See Watzig v. Tobin*, 292 Or. 645, 648-52 (1982) (*res ipsa loquitur* applied because the jury could have concluded the cow would not have been on the highway absent the owner's negligence). Rather, in this case, there is a two-step inquiry for the jury: first, whether it is more probable than not the revolving door was malfunctioning and, secondly, whether that malfunctioning door caused DuPuis to fall. As to the first inquiry, there is no question the revolving door was under the exclusive control of Marriott and, Marriott was solely responsible to maintain the door in a safe condition. As to the second inquiry, the cause of DuPuis's fall, the court declines to replace DuPuis's burden of proof with an instruction to the jury that it may infer DuPuis's fall was caused by the door simply because the door was malfunctioning. Certainly the event of falling can, and often does, ordinarily occur in the absence of negligence. It is DuPuis's burden to show Marriott failed to maintain its premises properly, and that such a failure was the

cause of her fall.[4]  Thus, the doctrine of *res ipsa loquitur* is not available to DuPuis under the circumstances here.  Accordingly, Marriott's request for summary judgment against DuPuis's Third Claim for Relief (*Res Ipsa Loquitur*) is granted.

*Conclusion*

Based upon the foregoing, Marriott's Motion for Summary Judgment Pursuant to FED. R. CIV. P. 56 (doc. #18) is GRANTED, in part, and DENIED, in part; DuPuis's Motion for Sanctions Re:  Spoliation (doc. #32) is DENIED; and Marriott's Motion for Leave (doc. #45) is DENIED.  IT IS FURTHER ORDERED that within 30 days of the date of this Opinion and Order, counsel for DuPuis will notify the court whether the Estate of Mabel DuPuis will proceed with this litigation.[5]

IT IS SO ORDERED

Dated this /5th day of January 2014.

John V. Acosta
United States Magistrate Judge

---

[4]If the jury should determine the door was malfunctioning but it was not the cause of DuPuis's fall, she may nevertheless present evidence of harm (injuries) caused by the malfunctioning door *after* she fell.

[5]The court was recently notified of Mabel DuPuis's death during the pendency of this litigation.

22 - OPINION AND ORDER